CITY OF ENGLEWOOD AND M. LESLIE DENNING, PLAINTIFFS, v. ALLISON LAND COMPANY, CHARLES BARTON, PAUL HUDSON AND WALTER D. VAN RIPER, AS TRUSTEES UNDER THE LAST WILL OF WILLIAM O. ALLISON, DECEASED, MAX BERNFELD AND THEODORE D. PARSONS, AS ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided June 25, 1956.

*Mr. LeRoy B. Huckin,* attorney for the City of Englewood.

*Messrs. Hein, Smith & Mooney (Mr. Bernard T. Hein,* appearing), attorneys for the plaintiff M. Leslie Denning.

*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey (*Mr. Thomas L. Franklin,* Deputy Attorney-General, appearing), for the State.

*Messrs. Van Riper & Belmont (Mr. Walter D. Van Riper,* appearing), attorneys for the trustees and Allison Land Company.

*Messrs. Walscheid & Rosenkranz (Mr. Milton Rosenkranz,* appearing), attorneys for the defendant Alan Kriegel.

GRIMSHAW, J. S. C. Originally this matter was submitted for determination on the pleadings and a stipulation of facts. The conclusions reached by me at that time are set forth at length in *City of Englewood v. Allison Land Co., 25 N. J. Super. 466 (Ch. Div. 1953).* They need not be repeated here.

Following the filing of the opinion the trustees applied for and were granted leave to take testimony. Several hearings were held at which testimony was received on behalf of all parties.

Among the assets of the Allison estate reduced to possession by the trustees was the capital stock of the Allison Land Company. That corporation, in turn, held title to approximately 600 acres of vacant land. This land consisted of tracts of varying size located in northeast Bergen County. The tract here in question, of about 78 acres, is located within the city limits of the City of Edgewood.

At the time of Mr. Allison's death the escarpment of the Palisades was in danger of destruction as a result of quarrying operations. Today that danger has been removed, thanks largely to private benefaction which made possible the construction of the Palisade Interstate Park. Title to the property bordering the face of the cliffs is now held either by the Palisade Interstate Park Commission or the New Jersey State Highway Department. The only exception is one tract which is operated as a park by the trustees of the Allison estate.

With the danger to the Palisades removed, the trustees cast about for ways in which they might carry forward the intentions of the testator. One of the projects determined on was the purchase of land along the highways traversing the district and the construction thereon of recreational areas. Such a project is presently being carried out.

The trustees also reached the conclusion that the money being spent for taxes on their vacant land holdings might better be used for other purposes. During the life of the trust the taxes paid have amounted to approximately $2,000,000. In furtherance of their purposes the trustees proceeded with the liquidation of their land holdings. Transfers within the Englewood Cliffs area were made with the consent of the Attorney-General and the approval of the court. The other sales were of lands so situated as to make it evident that their retention was not necessary nor useful for the purposes of the trust estate, and their disposition was well within the discretion of the trustees.

The sole remaining tract is the one in question. It lies on what has been described as the western slope of the Palisades. It is in a natural state, no attempt ever having

been made to improve it. Experts testified that it is the only place in the area where the flora and fauna indigenous to the Palisades may still be found. The retention of such a place in its natural state, in my opinion, would be a very definite implementation of the testator's wishes.

For years the trustees have been considering the construction of a park on this tract. Finally they sought information concerning the cost of such a project and received estimates ranging between $500,000 and $1,500,000. Concluding that the expected benefit would not justify the expenditure of such sums the trustees contracted to sell the lands to private interests for development purposes. The City of Englewood objected, as did the Attorney-General, and this litigation resulted.

The city claims that the property was dedicated for park purposes. The position of the city would be stronger if it evinced any readiness to assume the responsibilities which the dedication of the property for park purposes would entail. This it has carefully avoided. In other words, the city wants the park but it is unwilling to maintain it. But be that as it may, the recitations contained in the petition filed by the trustees in the Court of Chancery in 1942 and 1944, on which the city relies to establish a dedication, were mere expressions of the trustees' thoughts with regard to the future development of the property. There were no "acts and declarations of the owner, of such public and deliberate character, as makes it generally known, and not of doubtful intention." *Beach Realty Co. v. City of Wildwood,* 105 *N. J. L.* 317 (*E. & A.* 1928). The claim of dedication must fail.

The Attorney-General also objects to the proposed action of the trustees. While I do not regard his consent to the sale as an absolute requirement, I do feel that his opinion as guardian of the rights of the public is entitled to the most careful consideration. His objection places upon the court the burden of weighing carefully the arguments and testimony advanced by both sides.

I am satisfied from the testimony that the tract under consideration is especially well adapted for use as a natural park as distinguished from one more formal in character. As against the estimate of costs, introduced by the trustees, there is very respectable testimony that for an expenditure of less than $3,000 trails could be constructed which would render the tract completely accessible to the public. In fact, the point is stressed that construction and improvements should be kept at a minimum if the tract is to retain its greatest value.

As I have said before, I am firmly of the opinion that the maintaining of this tract of land in its natural state, thus protecting the plant, animal and bird life of the Palisades, is a project completely in harmony with the intent of the testator.

■■ It is not my purpose to tell the trustees what they should do. Rather, my function is to exercise a veto of actions which I feel do not carry forward the purposes of the trust. Accordingly, on the basis of the evidence before me, I shall continue the injunction against the consummation of the sale presently under consideration. The right of the trustees to make a further application for permission to dispose of the property, if changed conditions make such a course of action desirable, is reserved.